**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**UNITED STATES OF AMERICA,**

            **Plaintiff,**

                        **v.**         **10-CR-191A(Sr)**

**RODNEY HILL, et al.,**

            **Defendants.**

─────────────────────────────────────

## DECISION AND ORDER

       This case was referred to the undersigned by the Hon. Richard J. Arcara, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #3.

## PRELIMINARY STATEMENT

       The defendant, Tyrone Pennick ("Pennick"), along with nineteen others, is charged in a multi-count Superseding Indictment (Dkt. #296) with alleged cocaine trafficking through a continuing criminal enterprise and with conspiracy to possess with intent to distribute cocaine and cocaine base.  Presently pending are Pennick's non-dispositive motions directed to the Superseding Indictment.  Dkt. ##368, 431 and 477. This Court's Report, Recommendation and Order with respect to Pennick's motion to suppress GPS evidence, motion to suppress wiretap evidence, motion to dismiss Count 2 of the Superseding Indictment and motion to dismiss by reason of outrageous government conduct will be filed separately.  What follows is this Court's Decision and

Order with respect to defendant Pennick's non-dispositive discovery motions (Dkt. ##368, 431 and 477).

## FACTS

Defendant Pennick and twenty-six others were charged in a Criminal Complaint on December 15, 2009 with cocaine-related drug trafficking offenses in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846. The Criminal Complaint, authorized by the undersigned, was supported by a 281-page affidavit of Federal Bureau of Investigation ("FBI") Special Agent Vanessa Paris alleging, *inter alia*, that six months of court-authorized intercepted telephone communications, controlled purchases, informant information and other evidence established the defendants' long-standing participation in the trafficking of multi-kilogram quantities of cocaine and cocaine base.

Defendant Pennick was among the ten defendants indicted by a Federal Grand Jury on June 29, 2010. Thereafter, on May 3, 2011, a Federal Grand Jury returned a sealed Superseding Indictment. Dkt. #296. Defendant Pennick filed pretrial motions on November 29, 2011 (Dkt. #368) and the government filed its opposition to Pennick's pretrial motions on December 9, 2011 (Dkt. #380). Oral argument on defendant Pennick's motions was held on December 14, 2011. On or about February 29, 2012, Angelo Musitano, Esq. filed a Notice of Appearance on behalf of defendant Pennick. Dkt. #405. Counsel for the parties appeared before this Court on March 8, 2012 and newly retained counsel for defendant Pennick requested additional time to file

supplemental pretrial motions.  The Court directed that any supplemental pretrial

motions be filed no later than March 23, 2012.  Supplemental motions were filed on

behalf of defendant Pennick on March 23, 2012.  Dkt. #431.  The government filed its

response to the supplemental motions on April 6, 2012.  Dkt. #460.  Oral argument on

defendant Pennick's supplemental motions was held on April 10, 2012.  Further

supplemental pretrial motions have been filed, including another motion seeking the

disclosure of Grand Jury transcripts.  Dkt. #477.  The government filed a further

response on April 25, 2012.  Dkt. #484.


## DISCUSSION AND ANALYSIS

**Motion to Exclude Testimony of Non-Testifying Co-Conspirators**

Relying on *Bruton v. United States*, 391 U.S. 123 (1968) and the Sixth

Amendment to the United States Constitution, defendant Pennick requests that this

Court preclude the admission into evidence of all post-arrest statements by non-

testifying co-conspirators/co-defendants which may implicate the defendant in any way.

Dkt. #368, pp.3-4.  In its response, the government states,

> [t]here are no known written or oral statements made by co-
> conspirator [sic] which would implicate <u>Bruton v. Untied
> States</u>, 391 U.S. 123 (1968).  Accordingly, the Court need
> not bar any post-arrest statements made by non-testifying
> co-defendants and the defendant's motion is moot.
> Nonetheless, if the government later learns that post-arrest
> statements of the defendant's co-conspirator [sic] may
> implicate the defendant, the government will accordingly
> redact the co-conspirator's testimony to remove references
> to the defendant by name.

Dkt. #380, p.2 (internal citations omitted).  Based on the representations made by

counsel for the government and based on the fact that such a determination is best left

to the trial judge during the course of the trial, the defendant's request is denied as

moot.  "Responsibility for determining whether declarations of an alleged conspirator

should be admitted against another rests on the shoulders of the trial judge."  *United

States v. Mastropieri*, 685 F.2d 776, 787-88 (2d Cir. 1982).


**Bill of Particulars**

In his first-filed non-dispositive motion, defendant Pennick, in eleven

separately lettered requests directed to Counts 2 and 3 of the Superseding Indictment,

seeks the following: (a) a list of unindicted co-conspirators regardless of whether the

government intends to call any as a witness at the trial; (b) the specific times, dates and

locations when and where Pennick and the other co-conspirators combined and agreed

to possess with intent to distribute; (c) where "elsewhere" the co-conspirators allegedly

conspired; (d) how the co-conspirators, including Pennick, knowingly, willfully and

unlawfully combined, conspired and agreed to possess with intent to distribute; (e) a list

of all uncharged overt acts taken by the co-conspirators; (f) the exact weight of all

controlled substances Pennick allegedly conspired with co-conspirators to possess with

intent to distribute and the dates; (g) describe the significance of January 2000 as the

alleged date of the commencement of the conspiracy, if the exact date is not known to

the grand jury; (h) whether or not any individual present during the commission of any

alleged overt acts was acting for the government; (i) the names of any persons present

when the overt and substantive acts allegedly took place; (j) the dates when each

-4-

defendant joined the conspiracy, and the date when the conspiracy ended; and (k) the quantity of controlled substance distributed and possessed by each defendant and each co-conspirator during the course of the alleged conspiracy.  Dkt. #368, pp.6-7.

In its response to defendant Pennick's requests for particularization, the government asserts that what the defendant seeks is a bill of particulars regarding the development of the conspiracy and the defendant's role at each stage.  Dkt. #380, p.5. In addition, the government asserts that it should not be required to furnish particulars relating to the formation of a conspiracy, including when and how it was formed and when a particular defendant joined, because such details need not be proven at trial. *Id*.  The government also states,

> [i]t should also be noted that the Indictment and Superseding Indictment were preceded by 281 page criminal complaint, which criminal complaint provides a great deal of detail as to the instant charges and the defendant's conduct encompassed by this indictment.  Many of the particulars sought by the defendant could be derived simply by reading the criminal complaint which preceded this indictment.

Dkt. #380, p.6.  Finally, the government states,

> [b]ecause the defendant will have full discovery, exculpatory and impeachment material, a witness list, exhibit lists, including § 3500 materials, well in advance of the trial, he will not be surprised by the evidence against him or be subject to future jeopardy in a way he might otherwise justify ordering any of the particulars that he requests.

*Id*. at p.6.

In his second-filed non-dispositive motion (Dkt. #431), defendant Pennick seeks a bill of particulars with respect to Count 2 of the Superseding Indictment, the continuing criminal enterprise charge against Pennick.  Count 2 charges:

> Between in or about January 2007, the exact date being unknown, and on or about December 16, 2009, in the Western District of New York, and elsewhere, the defendant, Tyrone Pennick a/k/a Stuff, did knowingly, willfully, intentionally and unlawfully engage in a Continuing Criminal Enterprise in that he did violate Title 21, United States Code, Sections 841(a)(1), 843(b) and 826, which violations were part of a continuing series of violations of said statutes undertaken by the defendant, Tyrone Pennick a/k/a Stuff, in concert with five or more other persons, known and unknown, with respect to whom the defendant, Tyrone Pennick a/k/a Stuff, occupied a position of organizer, supervisor and manager, and from which continuing series of violations the defendant, Tyrone Pennick a/k/a Stuff, obtained substantial income and resources.  All in violation of Title 21, United States Code, Section 848(a).

Dkt. #296, p.3.

In support of his second request for a bill of particulars, defendant Pennick argues that the discovery provided by the government is "bereft of any meaningful information regarding any of these CCE elements."  Dkt. #431, p.10. Indeed, in twelve separately lettered requests, defendant Pennick seeks the following:

> a. State with specificity and particularity of [sic] date, time and place, the 'continuing series' of Title 21 drug violations;
>
> b. When each part of the continuing series commenced;
>
> c. Where each part of the continuing series took place;
>
> d. Who was present when each part of the continuing series occurred;

e. What particular Title 21 drug violation was involved in
each component part of the continuing series;

f. State with specificity and particularity the five or more
persons with whom Mr. Pennick allegedly undertook the
continuing series of Title 21 drug violations;

g. How Mr. Pennick acted in concert with these five or more
persons;

h. State with specificity how Mr. Pennick occupied a position
of organizer;

i. How Mr. Pennick occupied a supervisory position;

j. How Mr. Pennick occupied a position of management;

k. State with specificity and particularity how Mr. Pennick
obtained substantial income from his part of the continuing
series or Title 21 drug violations;

l. State with specificity and particularity the substantial
resources Mr. Pennick allegedly obtained from the part of a
continuing series of Title 21 drug violations.

Dkt. #431, pp.11-12.  In its response, the government states:

With all due respect to counsel, Pennick's claims with
respect to the necessity for a bill of particulars could only be
based on an inadequate digestion of the incredible volume
of evidence disclosed to date. In fact, counsel and the
government attorney had several conversations wherein it
was discussed that Mr. Musitano had been unable to obtain
the previously disclosed materials from Pennick's previous
counsel, eventually leading to the Government providing a
new set of e-discovery discs to Mr. Musitano. The short
time-frame counsel would have had to go through everything
may explain, in part, counsel's arguments. In fact, the
parties have discussed additional discovery requests
after Pennick's motions had been filed, as recently as a few
days ago, and such discussions have been cordial,
professional and fruitful.

Dkt. #460, pp.6-7.

It has become axiomatic that the function of a bill of particulars is to apprise a defendant of the essential facts of the crime for which he has been charged. *United States v. Salazar,* 485 F.2d 1272, 1277-78 (2d Cir. 1973); *cert. denied*, 415 U.S. 985 (1974); *Wong Tai v. United States*, 273 U.S. 77 (1927).   The charges in the Superseding Indictment, along with the discovery materials and the 281-page Criminal Complaint provided by the government, clearly inform the defendant of the essential facts of the crimes charged.   As a result, the defendant is not entitled to, nor is he in need of, the "particulars" being sought for that purpose.

> A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.) (mem.), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989); *see also United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977).   "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984) (citing *United States v. Burgin*, 621 F.2d 1352, 1358-59 (5th Cir.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d 474 (1980)); *see also [United States v.] Bortnovsky*, 820 F.2d [572] at 574 [(2d Cir. 1987)].   "Acquisition of evidentiary detail is not the function of the bill of particulars." *Hemphill v. United States*, 392 F.2d 45, 49 (8th Cir.), *cert. denied*, 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968).

*United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *see also United States v. Chen*, 378 F.3d 151, 163 (2d Cir.), *cert. denied*, 543 U.S. 994 (2004); *United States v. Porter*, No. 06-1957, 2007 WL 4103679 (2d Cir. Nov. 19, 2007), *cert. denied*, 128 S.Ct. 1690 (2008).

**Disclosure of Informant Information**

The defendant requests the disclosure of the identity of any and all informants and any and all government reports containing information received from any informant.  Dkt. #368, p.8.  In its response, the government states that such disclosure is unwarranted at this time.  Dkt. #380, p.7.  Relying principally on *Roviaro v. United States*, the government states in its response that the disclosure of the names, addresses and other information pertaining to government informants is unwarranted. In order for disclosure to be warranted, the informant's testimony must be material to the defense presented and the defendant must make some evidentiary showing demonstrating why the informant's testimony is significant to determining the defendant's guilt or innocence.  *Id.*

In order to be entitled to the requested information, the defendant must sufficiently state a basis for requiring the disclosure of this information or that the testimony of the informant would be of even marginal value to the defendant's case. Moreover, the Court notes that the holding of the Court of Appeals for the Second Circuit in *United States v. Saa*, 859 F.2d 1067 (2d Cir. 1988), *cert. denied*, 489 U.S. 1089 (1989), is instructive:

> The leading Supreme Court case on this question, *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), holds that
>
>> [w]here the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to the

fair determination of a cause, the [informant's]
privilege must give way.

353 U.S. at 60-61, 77 S.Ct. at 628. The Court explained that
"no fixed rule with respect to disclosure is justifiable." *Id.* at
62, 77 S.Ct. at 628. What is required is "balancing the
public interest in protecting the flow of information against
the individual's right to prepare his defense." *Id.* Whether
non-disclosure is erroneous "must depend on the particular
circumstances of each case, taking into consideration the
crime charged, the possible defenses, the possible
significance of the informer's testimony, and other relevant
factors." *Id. See Rugendorf v. United States*, 376 U.S. 528,
534-35, 84 S.Ct. 825, 829, 11 L.Ed.2d 887 (1964); *United
States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983); *United
States v. Ortega*, 471 F.2d 1350, 1359 (2d Cir. 1972), *cert.
denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409
(1973).

The defendant is generally able to establish a right to
disclosure "where the informant is a key witness or
participant in the crime charged, someone whose testimony
would be significant in determining guilt or innocence."
*United States v. Russotti*, 746 F.2d 945, 950 (2d Cir. 1984);
*United States v. Roberts*, 388 F.2d 646, 648-49 (2d Cir.
1968); *see United States v. Price*, 783 F.2d 1132 (4th Cir.
1986); *United States v. Barnes*, 486 F.2d 776 (8th Cir. 1973).
In *Roberts*, the informant introduced an undercover agent to
the defendant and was present when the defendant and the
agent negotiated and transacted two sales of heroin. The
Court, noting that the informant was "present during all the
significant events," 388 F.2d at 649, found that he was
"obviously a crucial witness to the alleged narcotics
transactions," *id.*, and therefore, his whereabouts should
have been revealed to the defense if properly requested.
But disclosure of the identity or address of a confidential
informant is not required unless the informant's testimony is
shown to be material to the defense. *See United States v.
Valenzuela-Bernal*, 458 U.S. 858, 870-81, 102 S.Ct. 3440,
3448, 73 L.Ed.2d 1193 (1982) (dictum); *United States v.
Lilla*, 699 F.2d at 105. As this Court's recent opinion in
*United States v. Jiminez*, 789 F.2d 167 (2d Cir. 1986) makes
clear, it is not sufficient to show that the informant was a
participant in and witness to the crime charged. In *Jiminez*,

-10-

> the informant was both participant and witness, but the
> district court's refusal to order disclosure of his identity was
> upheld on the ground that the defendant had failed to show
> that the testimony of the informant "would have been of even
> marginal value to the defendant's case.  789 F.2d at 170."

*Id.* at 1073; *see also United States v. Fields*, 113 F.3d 313, 324 (2d Cir.), *cert. denied*, 522 U.S. 976 (1997).  Absent the defendant stating a basis for requiring the disclosure of this information or that the testimony of the informant would be of even marginal value to the defendant's case, the defendant's request is denied without prejudice. Without more, the Court finds that the defendant has failed to sufficiently state a basis for requiring the disclosure of this information or that the testimony of the informant would be of even marginal value to the defendant's case.  Accordingly, defendant's request is denied without prejudice.


**Discovery**

As a threshold matter, the defendant acknowledges that the government has provided some voluntary discovery, including reports of examinations of narcotics and wiretap applications, orders and logs.  Dkt. #368, p.12.  By this request, however, the defendant "moves to compel discovery of any items or information to which the Defendant is entitled."  *Id.* at p.13.  Moreover, the defendant specifies the following ten separately lettered requests: (a) records, including reports and/or logs relating to the alleged conspiracy and the arrest of all co-conspirators; (b) reports, including reports and/or logs regarding radio transmissions from the officers at any search warrant or arrest scene regarding the investigation; (c) any and all reports relating to the booking

process; (d) reports and/or test results relating to the determination of drug quantity or

type of drug; (e) copies of any and all photographs taken relating to investigation; (f)

copies of any and all documents and photographs seized on the day of any searches;

(g) inspection of all items seized from the defendant on the day of his arrest; (h) names

and identities of expert witnesses, their qualifications, subject of testimony, reports,

results of tests, examinations or experiments; (i) a copy of any search warrant or arrest

warrant applied for and/or issued or denied during investigation; and (j) written

notification pursuant to Rule 12(d) of the Federal Rules of Criminal Procedure of any

evidence on which the government intends to rely that may be the subject of a motion

to suppress and to which the defendant is entitled to discovery pursuant to Rule 16.  *Id*.


In its response, the government states that since the return of the

Indictment, the government has complied and intends to continue to comply with the

requirements of Rule 12 and 16 of the Federal Rules of Criminal Procedure.  Dkt. #380,

p.8.   Specifically, the government states,

> [t]o that end, the United States provided comprehensive
> voluntary discovery in both the Indictment and Superseding
> Indictment portions of this case. On July 26, 2011, in
> accordance with the Court's scheduling order, the
> Government provided a complete set of digitized CDs to
> each defendant's attorney, which included all evidence in
> the Government's possession to which the defendant's [sic]
> were entitled under Rule 12 and Rule 16. Additionally, all
> physical evidence recovered in connection with this
> investigation is, and has been, available for inspection by the
> defendant's attorney. From a review of defendant's motion, it
> appears to be in large part a boilerplate recitation of
> discoverable items without regard to what has already been
> provided. If, upon careful review of said discovery, counsel
> finds any discrepancies in what the Government has stated

it provided, counsel is invited to bring it to the prosecutor's
attention and such items will be provided immediately.

As the government identifies any other evidence which falls
within the scope of Rule 16, it will provide such evidence to
defendants and their counsel. The government will continue
to comply with its continuing duties to disclose set forth in
Rule 16(c). The government herein notifies the defendant
that it may introduce all of this evidence at trial. Expert
disclosures and expert summaries will be provided as expert
witnesses who will testify at trial are identified by the
government.

The government believes it is in full compliance with Rule 12
and Rule 16 discovery. Correspondence previously provided
to all defense counsel, itemizing materials voluntarily
provided, is attached hereto and incorporated by reference
as **Exhibit A.**

Dkt. #380, pp.8-9.  The Court notes that the defendant's request was made by his prior

counsel and that since newly retained counsel filed his Notice of Appearance in late

February 2012, the government supplied him with copies of all discovery.  Based on the

representations made by counsel for the government, defendant Pennick's motion for

discovery is denied as moot.


**Brady Material**

Within his "Motion to Compel Production of *Brady* Material," the defendant

seeks the immediate disclosure of all exculpatory and/or impeaching material.

Dkt. #368, p.19.  In its response the government states,

[d]efense counsel has also requested the production of any
Brady/Giglio material in the government's possession.  This
request is unnecessary, as the government acknowledges
its affirmative and continuing duty to produce exculpatory
evidence and evidence the defense might use to impeach

-13-

> the government's witnesses. . . . Here, the government
> agrees to provide impeachment material, <u>i.e.</u>, promises of
> leniency or immunity agreements with government
> witnesses, plea and/or non-prosecution agreements and
> letters or memorandum of understanding regarding such,
> criminal arrest records of all prosecution witnesses, immoral,
> vicious or criminal acts committed by witnesses, prior
> inconsistent statements, and payments to witnesses or
> family members thereof, and all other promises or
> considerations given by government personnel to
> government witnesses or family members thereof.  Such
> production shall occur according to the schedule set by the
> Court prior to trial and no later than when the government
> produces any <u>Jencks</u> Act material.

Dkt. #380, pp.9-10.


"[A]s a general rule, *Brady* and its progeny do not require immediate

disclosure of all exculpatory and impeachment material upon request by a defendant."

*United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001).  The prosecution is obligated

to disclose and turn over *Brady* material to the defense "in time for its effective use." *Id.*

at 144.  With respect to impeachment material that does not rise to the level of being

*Brady* material, such as *Jencks* statements, the prosecution is not required to disclose

and turn over such statements until after the witness has completed his/her direct

testimony.  *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2; *In re United States*, 834 F.2d

283 (2d Cir. 1987).  However, if the government has adopted a policy of turning such

materials over to the defendant prior to trial, the government shall comply with that

policy; or in the alternative, produce such materials in accordance with the scheduling

order to be issued by the trial judge.

Based on the representations made by counsel for the government as to its obligations under *Brady* and *Giglio,* the defendant's request is denied, but the government is hereby directed to comply with the Second Circuit Court of Appeals' holding in *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) and *United States v. Rodriguez*, 496 F.3d 221 (2d Cir. 2007) by making timely disclosure of those materials to the defendant.

**Rule 404(b), 608 and 609 Material**

By this request, the defendant "respectfully requests that the Government notify the Defendant of any evidence that the Government contends would be admissible under Rule 404(b) of the Federal Rules of Evidence."  Dkt. #368, pp.19-20. In addition, the defendant also requests pretrial disclosure of any other evidence the Government intends to use to impeach the defendant's credibility should he choose to testify.  The defendant also requests a pre-trial hearing to determine the admissibility of such evidence.  *Id*. at p.20.  In its response, the government states that,

> [d]efendant has also requested notice of evidence the government will seek to introduce pursuant to Federal Rules of Evidence 404(b), 608 and 609.  The government will advise of its intent to use "other acts" evidence pursuant to Fed.R.Evid. 404(b), or evidence pursuant to Fed.R.Evid. 608(b) and 609, at the time it is ordered to do so, which, the general custom in this District is two to four weeks prior to trial together with <u>Jencks</u> material, as ordered by the trial judge.

Dkt. #380, pp.11-12.

Rule 404(b) only requires that "the prosecution. . . provide reasonable notice in advance of trial. . . of the *general* nature of any such evidence it intends to introduce at trial." (Emphasis added).  Insofar as the government has indicated that it intends to comply with any pretrial disclosure order entered by the trial judge and further, that it understands its disclosure obligations, defendant's request is denied as moot.  The Court notes that the issue of admissibility of such evidence pursuant to Rules 403 and 404(b) of the Federal Rules of Evidence is best left to the determination of the trial judge at the time of trial.  Accordingly, the defendant's request for an Order with respect to admissibility of such evidence is denied.

With respect to the defendant's request pursuant to Rule 608, Rule 608 does not contain the same pretrial notice as set forth in Rule 404(b).  Therefore, there is no requirement on the part of the government to make any disclosure of evidence, or its intent to use evidence at the trial pursuant to Rule 608 at this time.  Therefore, defendant's request in this regard is denied.  With respect to the defendant's request pursuant to Rule 609, based on the representations made by counsel for the government, defendant's request is denied as moot.  The government is hereby reminded that should the government learn of evidence of other crimes, wrongs and acts it intends to offer pursuant to Federal Rules of Evidence Rules 608 and 609 (impeachment material) during the trial, the government is hereby directed to provide such information consistent with its disclosure of *Jencks* material and the disclosure requirements set by the trial judge in advance of the trial.

**Witness Statements**

By this request, the defendant seeks the early disclosure of witness

statements pursuant to Title 18, United States Code, Section 3500.  Dkt. #368, p.20.

With respect to defendant Pennick's request for *Jencks* Act material, the government

states,

> [t]o the extent not already provided, the government will
> disclose written witness statements and investigative agency
> or police department memoranda of witness interviews no
> later than two weeks prior to trial, as is customarily ordered
> in this District.   . . . The government declines to provide
> statements and the identities of persons interviewed who will
> not be called to by the government.

Dkt. #380, p.12 (internal citations omitted).


As noted above, with respect to impeachment material that does not rise

to the level of being *Brady* material, such as *Jencks* statements, the prosecution is not

required to disclose and turn over such statements until after the witness has

completed his direct testimony.  *See* 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2; *In re*

*United States*, 834 F.2d 283 (2d Cir. 1987).  However, if the government has adopted a

policy of turning such materials over to the defendant prior to trial, the government shall

comply with that policy; or in the alternative, produce such materials in accordance with

the scheduling order to be issued by the trial judge.


Based on the representations made by counsel for the government, that it

will comply with the trial judge's pretrial order concerning the disclosure of witnesses'

statements, the defendant's request is denied.  Notwithstanding the foregoing, the

government is hereby directed to comply with the Second Circuit Court of Appeals'

holding in *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001) and *United States v.*

*Rodriguez*, 496 F.3d 221 (2d Cir. 2007) by making timely disclosure of those materials

to the defendant.


**Preservation of Rough Notes and Other Evidence**

By this request, the defendant seeks an Order from this Court requiring

all government agents and officers who participated in this investigation to retain and

preserve all rough or handwritten notes taken as part of their investigation, regardless

of whether or not the contents of the notes are incorporated in official records.  Dkt.

#368, pp.20-21.  In addition, the defendant also requests an Order from this Court

directing the government to preserve and protect from destruction, alteration, mutilation

or dilution any and all evidence acquired in their investigation of defendant.  *Id*.  In its

response, the government states,

> [t]he government has no particular objection to this request
> as all evidence in the case is and has been available for
> inspection throughout the course of the prosecution, and all
> federal law enforcement agencies already preserve such
> notes.  Further, the government will request the agents to
> retain their notes relevant to this investigation, which notes
> have not resulted in the preparation of a final report.

Dkt. #380, pp.12-13.

Although perhaps unnecessary, based on the representations made by counsel for the government concerning its acknowledgment of its obligation and its agreement to instruct the agents to retain and preserve rough notes, the express admonition of the Court of Appeals for the Second Circuit bears repeating in addressing this particular request of the defendant wherein the Court stated:

> [W]e will look with an exceedingly jaundiced eye upon future efforts to justify non-production of a Rule 16 or Jencks Act "statement" by reference to "departmental policy" or "established practice" or anything of the like.  There simply is no longer any excuse for official ignorance regarding the mandate of the law.  Where, as here, destruction is deliberate, sanctions will normally follow, irrespective of the perpetrator's motivation, unless the government can bear the heavy burden of demonstrating that no prejudice resulted to the defendant. . . .  We emphatically second the district court's observation that any resulting costs in the form of added shelf space will be more than counterbalanced both by gains in the fairness of trials and also by the shielding of sound prosecutions from unnecessary obstacles to a conviction.

*United States v. Buffalino*, 576 F.2d 446, 449-50, (2d Cir.), *cert. denied*, 439 U.S. 928 (1978); *see also United States v. Grammatikos*, 633 F.2d 1013, 1019-20 (2d Cir. 1980); *United States v. Miranda*, 526 F.2d 1319 (2d Cir. 1975), *cert. denied*, 429 U.S. 821 (1976).  Accordingly, the government is hereby directed to maintain and preserve all materials that are known by the government to exist, that constitute potential *Jencks* material in this case.

**Voir Dire of Expert Witnesses**

By this request, the defendant seeks an Order permitting his counsel to conduct *voir dire* of any proposed government expert witness at trial outside the presence of the jury.  Dkt. #368, pp.25-26.  In support of his request, the defendant asserts that "[i]n the present case, complete discovery has not been received from the government, including the names of and summaries by the government's proposed experts, if any, pursuant to Rule 16 of the Federal Rules of Criminal Procedure. Therefore, this motion is made so that if the government subsequently identifies any experts (such as to identify questioned substances), defense counsel may *voir dire* the expert outside of the presence of the jury."  *Id*. at p.26.

In its response, the government states that a determination of this request "is more appropriately resolved by the District Court Judge presiding over the trial in this case."  Dkt. #380, p.24.  In addition, the government states, "the government will provide expert disclosures and expert summaries as the government identifies expert witnesses who will testify at trial consistent with the District Court's standar [sic] pre-trial oder [sic] and the timing of expert summaries."  *Id*. at pp.25-26.  Insofar as the government appears to concede that it intends to rely on expert testimony and will comply with the Federal Rules of Criminal Procedure and the Federal Rules of Evidence concerning pretrial disclosure of documents and information relating to those experts, any motion *in limine* concerning the credibility of the proposed government expert witness and the admissibility of any expert's testimony should be left to the

discretion of the trial judge.  Accordingly, defendant's motion concerning *voir dire* of an expert witness outside the presence of the jury is premature and is denied as moot.


**Audibility Hearing**

By this request, the defendant requests that the Court hold an audibility hearing to determine whether any tapes that the government seeks to introduce at trial are audible.  Dkt. #368, pp.26-27.  In its response, the government states that it has produced recordings of all intercepted conversations for the defendants.  Dkt. #380, p.26.  Moreover, the government states that the defendant does not allege that any of the specific recordings are inaudible.  *Id*.


It would appear that neither counsel for the defendant nor counsel for the government have advised the Court that after a review of the audiotapes or CDs that may be used at trial by the government, there are any actual audibility problems or issues with respect to such tapes or CDs.  Therefore, the defendant's motion in this regard is denied without prejudice to the right to reapply for such relief after the tapes or CDs in question have been reviewed and it is determined that there is an audibility issue that needs to be resolved by this Court.  As part of this process, counsel for the government is hereby directed to identify those tapes or CDs that the government plans on using at the trial of the defendant and to have transcripts of those tape or CD recordings prepared.  Once such transcripts have been prepared, counsel for the government shall supply copies of the designated tapes or CDs and respective

transcripts to counsel for the defendant.  Counsel for the defendant is hereby directed

to review the aforesaid tapes or CDs and transcripts after receipt of same, and upon

completion of such review, make known to counsel for the government those portions

of the aforesaid tapes or CDs and transcripts that counsel for the defendant claims are

inaudible or, in the alternative, inaccurately transcribed.  Thereafter, counsel for the

government and the defendant are directed to confer for the purpose of resolving any

disputes that may exist as to audibility of the tapes or CDs in question and the

correctness of the transcripts of such tapes or CDs.  Should the attorneys be unable to

resolve any such disputes that may exist, counsel for the defendant may file a motion

for an audibility hearing, which motion must be filed and served within ten days after the

last conference between the attorneys seeking to resolve such issues.


**Disclosure of Grand Jury Minutes**

At the time defendant Pennick's second non-dispositive motion was filed

(Dkt. #431), the defendant sought the disclosure of the grand jury transcripts "for

purposes of further supplementing the defense motion to dismiss."  Dkt. #431, pp.9-10.

In support of his motion, defendant states,

> presumably the Grand Jury received information about Mr.
> Pennick's movements through the use of the GPS system.
> That information was obtained without a warrant similar to
> the warrants utilized under Title III interceptions.
> Consequently, introduction of that information before the
> Grand Jury is forbidden.  Consequently, and in light of the
> aforementioned presentation of possibly incomplete or
> misleading information to a Grand Jury, the Court should
> release the Grand Jury transcripts for purposes of further
> supplementing the defense motion to dismiss.

*Id.* Alternatively, the defendant requests that the Court conduct an *in camera* review of the transcripts. Dkt. #431, p.10. In its response to this specific request, the government states,

> [i]n the instant case, the defendant relies only on rank speculation of introduction of certain evidence which: (a) was <u>not</u> improperly obtained as alleged; and (2) *if introduced*, it would not have constituted Government misconduct so as to disturb the presumption of regularity in the Grand Jury proceedings.

Dkt. #460, p.6. In addition, the government refers the Court to its response to the defendant's motion to suppress GPS evidence. Dkt. #460, pp.10-11. It was in that response filed on April 6, 2012, that for the first time the government disclosed how it obtained the GPS evidence relative to defendant Pennick. Specifically, the government states, "[t]he location information the Government refers to as 'GPS monitoring,' as it relates to Pennick was derived from an ankle bracelet he wore during the relevant time period placed by New York State Division of Parole." *Id.* at p.10.

On April 18, 2012, defendant Pennick filed another motion seeking, *inter alia*, disclosure of the Grand Jury material pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(ii). Dkt. #477. By that motion, the defendant amplified the facts supporting his prior request for the disclosure of Grand Jury material. Specifically, the defendant elaborated on the purported decision by New York State Parole to add the electronic monitoring/global positioning component to the conditions of his parole. The defendant speculates that the decision of New York State Parole to implement an electronic monitoring/global positioning component to defendant Pennick's parole

-23-

release conditions was made at the behest of a federal agency.  In addition, the

defendant argues that the decision to continue to monitor defendant Pennick beyond

the 90 days initially approved by Parole was improper and a violation of his 4th

Amendment rights.  The defendant therefore concludes that the Grand Jury received

information about defendant Pennick's movements through the use of the GPS system

and received incomplete and/or misleading information.  Accordingly, defendant

Pennick requests the transcripts in the hope of bolstering his motion to dismiss the

Superseding Indictment.


In response to the defendant's motion, the government submitted an

affidavit of New York State Parole Officer Keil Milbrand who unequivocally stated,

"at no time were any supervision decisions directed by the FBI or any other federal

agency.  The Division of Parole acts alone in their decision-making process when it

comes to the supervision of NYS Parolees."  Dkt. #484-1, ¶ 12.  In addition, Parole

Officer Milbrand stated that in or about October 2008, after defendant Pennick was a

victim of a shooting and refused to cooperate with law enforcement in their

investigation, "it was decided at that time by a Senior Parole Officer that Pennick would

continue in the GPS program so as to enable NYS Parole to better effectuate its

responsibilities."  *Id*. at ¶ 10.


"A review of grand jury minutes is rarely permitted without factual

allegations of government misconduct."  *United States v. Torres*, 901 F/2d 205, 233 (2d

Cir. 1990).  The defendant "has the burden of showing that the government's use of the

-24-

grand jury was improper." *United States v. Salameh*, 152 F.3d 88, 109-110 (2d Cir.

1998); *see also United States v. Leung*, 40 F.3d 577 (2d Cir. 1994).  As the United

States Supreme Court has stated:

> We begin by reiterating that the law presumes, absent a
> strong showing to the contrary, that a grand jury acts within
> the legitimate scope of its authority.  See United States v
> Mechanik, 475 US 66, 75, 89 L Ed 2d 50, 106 S Ct 938
> (1986) (O'Connor, J., concurring in judgment) ("The grand
> jury proceeding is accorded a presumption of regularity,
> which generally may be dispelled only upon particularized
> proof of irregularities in the grand jury process").  See also
> Hamling v. United States, 418 US 87, 139, n 23, 41 L Ed 2d
> 590, 94 S Ct 2887 (1974); United States v Johnson, supra,
> at 512-513, 87 L Ed 1546, 63 S Ct 1233.

*United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300-301 (1991).

The defendant has failed to overcome the presumption of regularity

applicable to grand jury proceedings and therefore, his motion seeking a review of the

grand jury proceedings in this case is denied.

**Leave to Make Other Motions**

By this request, the defendant, "respectfully moves the Court for an order

allowing him to make further and additional motions, which may be necessitated by due

process of law, by the Court's ruling on the relief sought herein, by additional discovery

provided by the government or investigation made by the defense, and/or by any

information provided by the government in response to the Defendant's demands."  Dkt.

#368, p.27.  Subject to the limitations contained in the aforesaid quotation, the

defendant's request to make further and additional motions that may be necessary is granted.

**Government's Request for Reciprocal Discovery**

In addition to the relief requested by the defendant, the government has made a request for reciprocal discovery.  Dkt. #380, p.27.  The government has requested that the defendant permit it to inspect and copy all books, papers, documents, photographs and other tangible objects which the defendant intends to introduce as evidence-in-chief at the trial.  In addition, the government seeks to inspect all reports of physical or mental examinations and of scientific tests or experiments, within the possession or control of the defendant along with written summaries of expert witness testimony that the defendant intends to use at trial.  Since the defendant has moved pursuant to Rule 16(a)(1) of the Federal Rules of Criminal Procedure for similar materials and information, the government is entitled to this information pursuant to Rule 16(b)(1) and its request is granted.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Decision and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Decision and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Decision and Order  in accordance with the above statute, Fed. R. Crim. P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of**

**Rule 58.2 (concerning objections to a Magistrate Judge's Decision and Order),**

**may result in the District Judge's refusal to consider the objection.**


DATED:      Buffalo, New York
            May 11, 2012

                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**